UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

ALFRED GARY,

        Petitioner,

        v.                                 Case No. 07-C-0633

UNITED STATES OF AMERICA,

        Respondent.

DECISION AND ORDER DENYING AMENDED MOTION UNDER § 2255 (DOC. 5),
DENYING CERTIFICATE OF APPEALABILITY AND DISMISSING CASE

      Alfred Gary has filed a motion pursuant to 28 U.S.C. § 2255, asserting that his conviction and sentence in this court were imposed in violation of the United States Constitution. Gary was convicted of conspiracy to distribute and possession with intent to distribute fifty grams or more of crack cocaine and five kilograms or more of cocaine, then sentenced to life in prison. The Seventh Circuit Court of Appeals affirmed his judgment of conviction on July 8, 2006. *United States v. Hewlett,* 453 F.3d 876 (7th Cir. 3006).

      In his amended § 2255 motion, Gary asserts six claims, with related subparts: (1)(a) a due process violation regarding the government's filing of a second indictment in a different district, and (b) ineffective assistance of counsel for failing to investigate this issue; (2)(a) violation of his constitutional right to a speedy trial following a mistrial, and (b) ineffective assistance of counsel for failure to investigate this issue or move to dismiss on speedy trial grounds; (3)(a) improper amendment of the indictment by the trial court when it failed to instruct the jury on the essential element of possession and erroneously instructed the jury regarding intent, and (b) ineffective assistance of counsel for failing to object to the instruction or to seek an appropriate instruction; (4)(a)  insufficient evidence

to establish that the alleged offense occurred between the charged dates, and (b) ineffectiveness of trial counsel for failure to request an acquittal on the ground of insufficient evidence; (5) ineffective assistance of counsel for withdrawing a request for interlocutory review of the trial court's denial of a motion to dismiss based on double jeopardy; and (6) lack of jurisdiction to convict and sentence him regarding cocaine base because the drug is not listed on a controlled substance schedule. For the reasons set forth below, Gary's amended motion will be denied.

To establish ineffective assistance of counsel, Gary must show that counsel's representation was deficient, *i.e.,* that it fell below an objective standard of reasonableness, and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the prisoner has identified specific omissions, the court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The performance standard permits a wide latitude of permissible attorney conduct, and a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks deleted); *see also Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). Judicial scrutiny is "highly deferential" and the court strongly presumes that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated from his or her perspective at the time; hindsight should not distort the evaluation. *Id.*

After the prisoner establishes his counsel's ineffectiveness, he has to demonstrate prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Id.* at 697. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice that course should be followed. *Id.*

A faulty jury instruction can amount to constitutional error if it results in the denial of the petitioner's due process rights. *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973); *Falconer v. Lane*, 905 F.2d 1129, 1135 (7th Cir. 1990). The due process clause is violated if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt on the evidence presented. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Piaskowski v. Casperson*, 126 F. Supp. 2d 1149, 1153 (E.D. Wis. 2001). In addition, a claim that speedy trial rights were violated implicates both 18 U.S.C. § 3161 and the Sixth Amendment. Finally, a court's lack of jurisdiction is recognized as a basis for § 2255 relief. 28 U.S.C. § 2255(a).

With respect to the claims that were not raised on direct appeal, this court may examine their merits only if the petitioner (1) demonstrates cause for his procedural default and prejudice as a result, or (2) shows that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *accord Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). "Cause" must be "*external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. Ignorance or inadvertence is not "cause." *See id.* However, a fundamental miscarriage of justice is rare; and it occurs only where the petitioner is actually innocent of the crime for which he is imprisoned. *See Schlup v. Delo*, 513 U.S. 298, 321-33 (1995); *Gomez*, 350 F.3d at 679.

3

On appeal, Gary and Hewlett contended that there was a fatal variance between the single conspiracy charged in the indictment and the government's evidence of three smaller conspiracies. *United States v. Hewlett*, 453 F. 3d 876, 880 (7th Cir. 2006). Additionally, they asserted the district judge responded improperly to the question "Can we find one defendant guilty and one not guilty?" Lastly, Gary and Hewlett raised a sentencing argument under *Almendarez-Torres v. United States*, 523 U.S. 224 (1988). To the extent the instant claims were not presented on appeal or to the trial court and raise issues other than whether Gary was denied effective assistance of counsel, the claims have been procedurally defaulted. Regardless, the court will examine each of the claims.

Gary first claims that his due process rights were violated because approximately four years prior to the conviction at issue, he was indicted in the Western District of Wisconsin. The indictment in the Western District was dismissed, and an indictment based upon similar facts was filed in the Eastern District of Wisconsin, ultimately leading to his conviction.

Generally, the decision when or where to pursue an indictment is exclusively a matter of prosecutorial discretion. *See United States v. Brock*, 782 F.2d 1442, 1444 (7th Cir. 1986) (the United States Attorney "enjoys broad discretion in setting prosecutorial priorities"). Nevertheless, an indictment may violate the due process clause if pre-indictment prosecutorial delay causes "substantial prejudice to [a defendant's] rights to a fair trial." *United States v. Marion*, 404 U.S. 307, 324 (1971).

The due process clause plays only "a limited role in protecting against prosecutorial delay." *United States v. Anagnostou*, 974 F.2d 939, 941 (7th Cir. 1992). An indictment must be dismissed only for "the most egregious pre-indictment government delay -- that

4

which transgresses 'fundamental conceptions of justice' and 'the community's sense of fair play and decency.'" *Id.* If the defendant cannot show that the delay rises to that level of egregiousness, his due process challenge will not stand.

To test this conclusion, the Seventh Circuit applies two standards for determining whether pre-indictment prosecutorial delay amounts to a due process violation. In one line of cases, the Seventh Circuit has required the defendant to demonstrate actual and substantial prejudice from the delay. *See, e.g., United States v. Nichols*, 937 F.2d 1257, 1260 (7th Cir. 1991). If the defendant can make this showing of prejudice, the burden shifts to the government to establish that the prejudice is outweighed by government interests. *Id.* Alternatively, the Seventh Circuit has held the defendant to a higher burden. Under the more stringent standard, the defendant can shift the burden to the government only if he can show: (1) that the government delayed the indictment intentionally for tactical reasons; and (2) that the delay caused him actual and substantial prejudice. *See, e.g., United States v. Dickerson*, 975 F.2d 1245, 1252 (7th Cir. 1992).

Here, it is immaterial which standard is used in reviewing Gary's petition because he fails to establish actual and substantial prejudice. Gary does not even make an allegation of prejudice arising out of the delay. And, the mere suggestion of prejudice is insufficient as a matter of law to support Gary's petition.

Next, Gary claims that he was denied his constitutional right to a speedy trial due to the delay between his mistrial and new trial. He was brought to trial on October 1, 2003, and a mistrial was declared on October 2, 2003. The second trial began February 23, 2004.

5

Following a mistrial, a new trial must "commence within seventy days from the date the action occasioning the retrial becomes final." 18 U.S.C. § 3161(e). Gary asserts that he was denied his statutory speedy trial and constitutional rights to a speedy trial between the declaration of a mistrial and the commencement of the trial that resulted in his conviction, and that he was denied his right to effective assistance of counsel when his trial attorney failed to seek dismissal of the indictment based on these violations. These arguments will be addressed in turn.

Gary's statutory speedy trial argument fails because he waived the argument. He never presented his statutory speedy trial claim to the district court, and the Act explicitly provides that a defendant waives his rights under the statute if he does not move to dismiss the indictment. 18 U.S.C. § 3162 (a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."). The Seventh Circuit has recognized that a defendant's failure to move for dismissal prior to trial or entry of a guilty plea constitutes a waiver of his rights under the Act. *United States v. Morgan*, 384 F.3d 439 (7th Cir. 2004). In other words, to preserve the claim, Gary would have had to move to dismiss the indictment before trial; the failure to do so forecloses this claim on post-conviction review.

In addition to his Speedy Trial Act claim, Gary raises a constitutional speedy trial claim. The Sixth Amendment guarantees an accused "the right to a speedy and public trial." U.S. Const. amend. VI. Gary contends that the 90-day pretrial delay violated his Sixth Amendment right to a speedy trial. While related, the constitutional and statutory rights to a speedy are distinct. This means that "a violation of one [right] may be found without a violation of the other." *United States v. White*, 443 F.3d 582, 588 (7th Cir. 2006).

6

A Sixth Amendment speedy-trial claim turns on (1) whether the pretrial delay before trial was uncommonly long, (2) whether the government or the defendant is more responsible for the delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as the delay's result. *Doggett v. United States*, 505 U.S. 647, 651, (1992). However, these factors do not support Gary's claim of a Sixth Amendment speedy trial claim.

As an initial matter, the length of time from accusation to trial is a triggering mechanism: without a delay that is presumptively prejudicial, the court need not examine the other factors. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The constitutional right attaches only after an arrest, an indictment, or some other form of official accusation. *United States v. Souffront*, 338 F.3d 809, 835 (7th Cir. 2003). As a general matter, courts have found delays approaching one year to be presumptively prejudicial. *United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000). In this case, officers arrested Gary on May 20, 2003; he was arraigned on June 6, 2003; the first trial commenced on October 1, 2003; and a mistrial was declared on October 2, 2003. The trial that resulted in conviction began on February 23, 2004. The nine-month delay between arrest and conviction, while not presumptively unreasonable, is long enough to warrant a more searching analysis. *Compare United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1127 (7th Cir. 1984) (finding a pre-trial delay of eight months presumptively prejudicial) *with Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (finding that a pre-trial delay of eight months in a robbery case did not constitute presumptive prejudice). Deciding that a delay is presumptively prejudicial requires the court to next "consider, as one factor among several, the extent to

7

which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652.

The length of delay in this case does not weigh strongly in Gary's favor because it does not clearly exceed the minimum and was not unreasonable. Gary was arraigned a few days after he was arrested and was tried and convicted within less than nine months after arraignment. His aborted first trial commenced about four months after arraignment. During the period between the arraignment and the initial trial, Gary and Hewlett filed motions to suppress. Hewlett also filed a motion to dismiss. *United States v. Gary*, No. 03-CR-23, Docs. 17, 18, 23 (E.D. Wis. filed June 25, 2003, and July 7, 2003). The magistrate judge held evidentiary hearings and issued recommendations, Hewlett objected to a recommendation and the court overruled that objection. The first trial was then delayed upon Hewlett's request for an adjournment as well as upon consent to an adjournment. Following the mistrial, the court scheduled the second trial for November 3, 2003.

However, on October 7, Gary moved to dismiss the case on double jeopardy grounds, and the government responded with a motion to strike Gary's motion to dismiss. *United States v. Hewlett*, No. 03-CR-23, Docs. 69, 70 (filed Oct. 7, 2003). During a hearing on October 20, 2003, both motions were withdrawn. *United States v. Hewlett*, No. 03-CR-23 (E.D. Wis. filed July 5, 2005). On the Friday before the second trial was to start, Gary filed an amended motion to dismiss *United States v. Hewlett*, No. 03-CF-23, Doc. 77 (E.D. Wis. filed Oct. 30, 2003).

That same day, the court held a hearing on the amended motion to dismiss and denied the motion on the record. *United States v. Hewlett*, No. 03-CR-23, Doc. 149 (E.D.

Wis. filed July 5, 2005). Because the hearing was called on Gary's motion, Gary appeared by telephone, but Hewlett did not appear. However, Gary's attorney and Hewlett's attorney were present in court, along with two government attorneys. Toward the end of the hearing, the government requested an adjournment because the father of the primary prosecutor had suffered a stroke in Texas. The supervisor of the primary prosecutor stated that she wanted the primary prosecutor "to get on a plane tomorrow morning to go see his father and be with his family. . . . Nonetheless, Mr. Gonzales has made it entirely clear to me that if the case stays on the trial schedule for Monday he will be here and will be trying it." *Id.* at 35.

Gary's counsel expressly stated that he would not oppose an adjournment because of the prosecutor's situation: "In regard to the request for the set over, . . . I'm not going to oppose that. We're human beings, we're lawyers, and we're also human beings." *Id.* at 36. Gary did not voice an objection. Nor did Hewlett's counsel, who was present, voice an objection.

At the hearing the clerk offered December 1, 2003, as a new trial date, but Gary's counsel had a conflict with that date. *Id.* at 37. The parties were then directed to contact the clerk the next day (or next business day) to reschedule the trial. *Id.* at 38. In granting an adjournment, the court stated the following:

> It does appear that there is good cause for the delay inasmuch as the principal prosecutor in this case has a family member with a serious medical problem and it will be necessary for Mr. Gonzales to travel to attend to his father and to visit with him as a result of a stroke.
> We will try to get this on so as not to interrupt any other matters that have to be attended to by the parties, but I'm not certain whether or not we can accommodate everybody's schedule but we will do the best we can.

*Id.* at 38.

9

A few weeks later, on December 15, 2003, the court held a final pretrial conference at which Hewlett and Gary appeared in person. A February 23, 2004, trial date was confirmed. The court noted that Hewlett had not been on the telephone during the prior hearing and asked Hewlett's counsel if she wished to be heard on any matters and whether she was prepared to go forward with trial. She stated that Hewlett had been apprised of the prior proceedings and that she was prepared to go forward on February 23. There was no objection to the new trial date. Also on December 15, 2003, the court issued written orders denying Gary's first and amended motions to dismiss. *United States v. Hewlett*, No. 03-CR-23, Docs. 81, 82 (E.D. Wis. filed Dec. 15, 2003).

Considering the various defense motions, the adjournments requested by the defense, the continuance granted to the government, with Gary's approval, because of a family medical emergency to ensure the continuity of trial counsel, there was minimal delay of the second trial.

The second factor in assessing a Sixth Amendment speedy trial claim is the apportionment of blame: who was more at fault for the delay, the defendant or the government. This factor is particularly important, and has been called "the flag all litigants seek to capture." *Williams v. Bartow*, 481 F3d 492, 506 (7th Cir. 2007). But this factor is neutral here. The October 2003 mistrial was the result of a government error and a defense motion for a mistrial. The adjournment of the November 3 retrial was no one's fault, and Gary did not object to a continuance. Therefore, although neither delay can be directly attributed to Gary, they are equally unattributable to the government. Furthermore, the record shows that the government dealt with pretrial matters diligently and timely. Finally, Gary has not shown that there was any stalling by the government or anything

10

other than "neutral" delay due to ordinary procedures and scheduling conflicts. *See Barker*, 407 U.S. at 531; *White*, 443 F.3d at 590.

The third Sixth Amendment speedy trial factor is whether Gary asserted his speedy trial right. The record shows that he did not. So, this factor weighs heavily against him, because he assented to the delays other than that resulting from his motions and no unfair prejudice is apparent. *Barker*, 407 U.S. at 531; *White*, 443 F.3d at 591.

Finally, the fourth Sixth Amendment speedy trial factor is prejudice. In some cases, the length of the delay alone may establish prejudice. *E.g., Doggett*, 505 U.S. at 655-56; *United States v. Arceo*, 535 F.3d 679, 686 (7th Cir. 2008). This is because time can erode evidence and testimony in ways that the parties cannot identify or prove, and so the importance of this sort of prejudice increases with the time elapsed. *Doggett*, 505 U.S. at 655-56. But even when prejudice may be presumed from the length of the delay, prejudice alone will not carry the day for a defendant absent a strong showing on the other factors. *See United States v. Oriedo*, 498 F.3d 593, 600-01 (7th Cir. 2007) (delay of three years was "substantial," but was insufficient to constitute Sixth Amendment violation). Gary does not argue that he suffered prejudice as a result of delay before trial. Rather, he suggests that he was prejudiced only as a result of his counsel not seeking to vindicate his right. Therefore, in the Sixth Amendment analysis, this factor weighs against Gary. Because none of the four prongs favor him, this analysis demonstrates that Gary's constitutional right to a speedy trial was not violated.

As to Gary's claim that his constitutional right to counsel was violated because his attorney failed to investigate whether his Sixth Amendment right was infringed and failed to move the court to dismiss all charges against him, this claim also fails. While counsel's

11

failure to investigate and file a motion to dismiss the indictment may have been deficient performance, Gary does not demonstrate that he was prejudiced as a result of this deficient performance.

Gary is mindful that for him to prevail there must be a reasonable probability that the outcome of his trial would have been different, yet does not provide any evidence demonstrating that probability. Consequently, his arguments are not sufficient to meet the standard of a reasonable possibility that the trial would have had a different outcome. As such, Gary's claim does not rise to the level of a constitutional deprivation of his right to effective counsel.

Gary next claims that the court amended the indictment improperly when it failed to instruct the jury on the essential element of possession. Specifically, he suggests that by failing to define possession as actual or constructive for the jury, the court broadened the permissible grounds for his conviction. This argument is without merit.

The Fifth Amendment states, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. This provision prohibits constructively amending an indictment at trial because the Fifth Amendment requires an indictment of a grand jury to guarantee that the allegations in the indictment and the proof at trial "match in order to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense." *United States v. Trennell*, 290 F.3d 881, 888-89 (7th Cir. 2002). A constructive amendment occurs when "the government, the court, or both, broadens the possible bases for conviction beyond those presented by the grand jury." *Id.* at 888.

12

Essentially, Gary submits that because the jury was not given a definition of possession, it could have convicted him of constructive possession or actual possession. This argument fails because Gary misreads the law of this circuit. Possession may be actual or constructive, and "there is no legal difference . . . between actual and constructive possession." *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008). Furthermore, his attorney adhered to the law of this circuit in not objecting to the jury instructions as promulgated; and as such counsel's performance cannot possibly be deficient. *United States v. Gary, et. al.,* No. 03-CR-23, Doc. 163). Therefore, Gary's attorney did not perform deficiently and did not deny him effective assistance of counsel.

Next, Gary contends that the government did not prove that the charged conspiracy took place within or reasonably near to the period stated in the indictment. Indeed, "unless the particular date is an element of the alleged offense, it is generally sufficient to prove that the offense was committed on any day before the indictment and within the statute of limitations." *United States v. Leibowitz*, 857 F.2d 373, 378 (7th Cir. 1988) (citations omitted).

Gary suggests that because the evidence does not show that he and his co-defendant conspired specifically "on or about December 1, 1994 and April 24, 2003," the evidence was not sufficient to sustain a guilty verdict. This is simply not the case. The government presented voluminous evidence that the conspiracy took place between December 1, 1994, and April 24, 2003. These were the bookends of the dates charged in the indictment, and the bookends of the dates between which the jury found Gary to be participating in a drug conspiracy. Attempting to focus exclusively on the individual dates is not a colorable legal argument because these dates were not an element of the charged

13

offense. Rather, the range of dates comprised an element necessary to prove the offense. Therefore, Gary may not now attempt to focus upon outlier, individual dates to challenge his conviction.

Regardless, Gary's attorney performed reasonably in not challenging the sufficiency of the range of dates charged because these dates were not an element of the charged offense. Therefore, Gary's attorney did not perform deficiently, and Gary was not denied his right to effective assistance of counsel.

Gary also argues that his counsel's performance was deficient because he did not seek dismissal based upon double jeopardy, arising from the "prosecutor's misconduct" that led to a mistrial. The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated trials for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671-672 (1982). In general, a defendant has a right to have his trial completed by the first jury impaneled. *Id.* ("As part of the protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal'"). However, after a mistrial has been declared, the Double Jeopardy Clause generally will not bar retrial if there is a "manifest necessity" for the state to retry a defendant. *Id.* Additionally, the Double Jeopardy Clause ordinarily will not bar retrial when the defendant has moved for a mistrial. *Id.* at 673.

Rather than a full-scale prohibition, courts have recognized a "narrow exception" to the general rule that the Double Jeopardy Clause will not bar retrial, which applies where the defendant can show that prosecutorial or judicial misconduct caused the defendant's mistrial request. *Id.* Here, Gary attempts to invoke this rule, suggesting misconduct on the part of the Assistant United States Attorney due to his remarks during the government's

14

opening statement. In *Kennedy*, the Supreme Court clarified the parameters of the bar on retrial based on prosecutorial or judicial misconduct regarding the scope of that exception. *Id.* at 679. The touchstone for the analysis is the intent of the prosecutor . *Id.* at 676. If the prosecutor acted intentionally to "goad" the defendant into moving for a mistrial, then the Double Jeopardy Clause may apply. *Id.* However, the Court stressed that "prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion," is not by itself sufficient to bar retrial. *Id.* at 676-677. Instead, there must be evidence that the prosecutor "intended to goad" or "intended to provoke the defendant into moving for a mistrial." *Id.* at 677, 679. Here, in spite of Gary's contention, no such evidence exists.

Unless the prosecutor is purposefully trying to abort the trial, his misconduct will not bar a retrial. *Id.* at 675-76. Here, following his error, the prosecutor explained that he made a mistake during the government's opening statement when he referred to the young females who were recruited by Gary and Hewlett–African Americans–as the "white girls." He noted that the government's African American witnesses that he met with while preparing for trial referred to these women as the white girls and that he used their terminology inadvertently.

Based on the prosecutor's demeanor, speech pattern, and the flow of his opening statement, and the absence of any clear reason for the prosecutor to intentionally seek to abort Gary's first trial, the court finds that the mistrial was due to a truly unfortunate error. In other words, the prosecutor's remark that the African American defendants recruited white girls was not intended to goad Gary and Hewlett into moving for a mistrial. As a result, the Double Jeopardy Clause of the Fifth Amendment did not bar a retrial.

15

Furthermore, Gary's attorney moved to bar retrial on double jeopardy grounds, and that motion was denied. (See, e.g., Transcript of Oct. 30, 2003 Motions, *United States v. Gary et. al.*, No. 03-CR-323 (E.D. Wis. Jul. 5, 2005), ECF No.145; Minutes of Dec. 15, 2003 Pretrial Proceedings at 3:17-24, *United States v. Gary et. al.*, No. 03-CR-323 (E.D. Wis. Jul. 5, 2005), ECF No. 150). This decision to seek an order barring retrial represents a reasonable litigation strategy, and as such, Gary's attorney performed competently. Therefore, Gary's attorney did not perform deficiently, and Gary was not denied his right to effective assistance of counsel.

Finally, Gary argues that the court was without jurisdiction to convict and sentence him because cocaine base (crack) was not on the controlled substances schedule. Contrary to Gary's assertion, cocaine base, as an extract of coca leaves, is recognized as a Schedule II controlled substance. 21 U.S.C. § 812(C)(a)(4). Because Gary was charged with a violation of the federal Controlled Substances Act, 21 U.S.C. §§ 841 et seq., it follows that this court had jurisdiction to hear and decide his case pursuant to 18 U.S.C. § 3231, which provides for district court jurisdiction over "all offenses against the laws of the United States."

Admittedly, the Seventh Circuit does not have a rigid definition of crack cocaine, because doing so would invite those in the drug trade to make minor changes in structure, processing, or packaging of the drug to avoid the increased penalties for selling crack cocaine. *United States v. Abdul*, 122 F.3d 477, 479 (1997). Therefore, instead of applying a rigid definition, this circuit requires a sentencing judge to determine whether a defendant sold "crack," as those who buy and sell in the market generally understand the term. *Id.* The experts in this field are those who spend their lives and livelihoods enmeshed with the

16

drugs–users, dealers, and law enforcement officers who specialize in narcotics crimes. *United States v. Kelly*, 519 F.3d 355, 364 (7th Cir. 2008). One particularly illuminating source can be the accused themselves, as knowledge of the specific substance involved will usually automatically imply knowledge that the substance is controlled. *United States v. Turcotte*, 405 F.3d 515, 525 (7th Cir. 2005). Regardless, this court has no reason to doubt its jurisdiction over the controlled substance violation charged in this case. Now, therefore,

IT IS ORDERED that Gary's § 2225 motion is denied.

IT IS FURTHER ORDERED that because Gary makes no substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

17